(140 App. Div. 378.)

NANIKO v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Division, First Department.   November 4, 1910.)

1. MASTER AND SERVANT (§ 279*)—INJURY TO WORKMEN—COMPETENCY OF FELLOW EMPLOYÉ—EVIDENCE—SUFFICIENCY.

A single act of casual negligence does not per se tend to prove one to be careless or imprudent; and hence any negligence of one, employed to guard a scaffold suspended over a street from being struck by passing vehicles, in permitting a truck to strike it, resulting in injury to a fellow workman, is insufficient to establish his incompetency, so as to charge the employer for liability for the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975; Dec. Dig. § 279.*]

2. MASTER AND SERVANT (§ 279*)—INJURY TO WORKMEN—NEGLIGENCE—EVIDENCE—WEIGHT.

Evidence held to show that a watchman, stationed to guard a scaffold suspended over a street from being struck by passing vehicles, attempted to prevent a truck from striking it, as affecting the employer's liability for injury to a workman who was thrown to the street.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975; Dec. Dig. § 279.*]

3. MASTER AND SERVANT (§ 163*)—INJURY TO WORKMAN ON SCAFFOLD—EMPLOYER'S LIABILITY.

An employer is not liable for injury to a workman on a scaffold over a street caused by a truck striking it, on the theory that one watchman was not enough to guard against such accidents, if the watchman negligently failed to stop the driver, or if he did all that a reasonably prudent man could to avoid the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 328–330; Dec. Dig. § 163.*]

Appeal from Trial Term, New York County.

Action by Charles Naniko against the Interborough Rapid Transit Company.   From a judgment for plaintiff, and from an order refusing a new trial, defendant appeals.   Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Bayard H. Ames, for appellant.
Harry J. Sondheim, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DOWLING, J. The plaintiff was a painter in the employ of the defendant, and on August 11, 1908, was directed, in the course of his duties, to paint a bridge forming part of the platform structure of the elevated railway at 149th Street and Third Avenue Station, in the city of New York. The method he was instructed to follow was to enter a canvas scaffold, 15 to 18 feet long, which had previously been suspended under the bridge, and which was attached thereto, and into which the men went over the hand railings, carrying their paint pots with them. The bridge itself was some 12 to 14 feet above the street, and when the canvas was empty its lower surface was some 10 or 11 feet above the street; but, when the men were working within it, it sagged down so that it was perhaps 7½ to 8½ feet, or at the outside 10 feet, above the street. This canvas ran across a part of the highway and a short distance over the sidewalk, and was about 5 or 10 feet south of the southerly corner of 149th street. While the men were working in this canvas, a loaded lumber truck, coming easterly out of 148th street, turned into and down Third avenue. The stanchion thereof, coming in collision with the canvas, ripped it open in such a way that the plaintiff was precipitated to the street and received the injuries whereof he complains. What transpired before this collision is a matter of dispute.

The witness Hehre, who testified that he was employed by the defendant "to watch out for wagons or anything that might come along, to protect the canvas and to keep them away, and tell them to go to the other side of the street," further testified that he saw this truck in question coming through the cross-street from west to east, and that as the driver turned his horses south, and swung under the canvas, he (Hehre) grasped hold of the inside horse and shouted to the driver to stop, whereupon the driver said, "That is all right," and drove right on, while Hehre pulled the horse's head around. The witnesses Loughlin and Ostrander testified that they saw Hehre shout to the driver and seize hold of the horse's head; but the driver went ahead, regardless of the shout or the attempted stopping of the horses. In contradiction to this, the driver of the wagon, produced as a witness for the plaintiff, testified that, although a man did run out in front of the team and wave his hands and shout to him, it took place after he had struck the canvas. He said that he saw the canvas hanging, but thought that he could clear it, and denied that Hehre had ever taken hold of the horses.

This action was commenced under the employer's liability act (Consol. Laws, c. 31, §§ 200–204), but when finally submitted to the jury it was so submitted upon the theory of a common-law liability, due to defendant's negligence in either (1) not guarding more thoroughly the place where plaintiff worked, or (2) in stationing a person to guard the place who was negligent in the performance of his duty. The question of plaintiff's contributory negligence was expressly waived.

The learned trial court first charged the jury, at the request of the defendant's counsel, that if the watchman was a competent man, and neglected his duty, then plaintiff could not recover; for his act was

the act of a fellow servant, for which the defendant would not be liable. This would appear to have reduced the defendant's liability to the first theory—that it did not provide sufficient guards or watchmen for the canvas. But the court went further. The jury were instructed that, if they found that the watchman was competent, their verdict should be for the defendant; that, if they found that Hehre was a competent man, then the company was not liable; but they were to judge whether he was competent, or not, on all the circumstances in the case, taking into consideration, if they arrived at that question, "that he did not watch."

Thereupon defendant requested a charge that there was no evidence in the case that Hehre was not a competent man. This request was refused, and we think improperly, for there was absolutely no proof in the case of any incompetency on the part of Hehre, claimed or shown, save upon the occasion in question; and not only did the court charge without objection that Hehre's own negligence upon the occasion in question would have prevented a recovery by plaintiff, but it is well established that a single act of casual negligence does not per se tend to prove a party to be careless and imprudent, and unfitted for a position requiring care and prudence. Baulec v. New York & Harlem R. R. Company, 59 N. Y. 356, 17 Am. Rep. 325.

Nor was there evidence in the case of any specific acts of incompetency upon the part of the watchman, which the master knew or ought to have known. Park v. N. Y. C. & H. R. R. R., 155 N. Y. 215, 49 N. E. 674, 63 Am. St. Rep. 663.

In conclusion, the jury were charged that, even if they found that the watchman did not discharge his duty of watching, there still would be left for their consideration the question of whether or not, on all the facts, the placing of this canvas, with only one man to guard it, was a sufficient discharge of defendant's duty to act as a reasonably prudent person would have acted under the circumstances.

The watchman was placed there to guard against the possibility of just such an event as took place. He was looking for vehicles coming south, to divert them to the other side of the street. He did see this truck coming south, and by a preponderance of evidence it is fairly established that he not only shouted out to the driver, but took hold of one of the horses, in an attempt to stop their progress. The driver admits that he saw the canvas, but thought that he could clear it.

If Hehre, the watchman, did not do as he says he did, that is, shout out and endeavor to stop the progress of the horses, but did as the driver claims, that is, shouted out after the accident only, then the negligence was that of Hehre, and under the law of this case the defendant is not liable. If, on the other hand, Hehre's corroborated testimony is accepted as true, then he had done all that a prudent and reasonable man could have done to prevent the accident, which would then have been due to the recklessness or mismanagement of the driver of the truck, and the absence of more watchmen in no way caused or contributed to the accident.

It follows, therefore, that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.